UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Lonnial L. Roundtree,

    *Plaintiff,*

v.

Tom Dart, *et al.*,

    *Defendants.*

No. 20 CV 501

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Lonnial Roundtree, a detainee in custody at the Cook County Jail, filed this civil rights action *pro se* under 42 U.S.C. § 1983 arising from a claim of excessive force. [Dkt. 62.] A subset of Defendants—Heather Bock, Larry Schurig, Michael Bennett, and Besart Mila (collectively, "Defendants")—have moved for summary judgment, arguing that Plaintiff has failed to exhaust his administrative remedies regarding his conspiracy claim as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons that follow, the motion is denied.

I.    **Background**

Plaintiff was booked and detained at Cook County Jail as a pretrial detainee on July 9, 2019. [Dkt. 110 at 3.][1] At all relevant times, Defendant Bock was employed as the Director of the Use of Force Review Unit; Defendant Schurig was the Executive Director; and Defendants Mila and Bennett were Unit investigators. [Dkts. 110, ¶¶ 2–4; 62 at 14–15.] Apart from these roles, the record contains no information about

---

[1]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

the Use of Force Review Unit, its reporting structure, or where this entity falls within the overall structure of Cook County government.

The Second Amended Complaint alleges that on October 24, 2019, Plaintiff was subject to excessive force while his hands were cuffed behind him on his way to court. [Dkt. 62 at 6.] According to Plaintiff's allegations, Sgt. Bellettiere, Officer Cruz, and Lt. Greer, together with Officers Dusek, Cortez, Sgt. Rafferty and others[2] were involved in this underlying incident. [*See generally id.* at 7–12.] Plaintiff was later seen by a medical provider and prescribed pain medication for his injuries. [*Id.* at 14.]

Following these events, Plaintiff filed several grievances relevant to this lawsuit that the Court summarizes below.

### A.      Grievance 2019x11365 filed on October 24, 2019

On October 24, 2019, Plaintiff filed grievance 2019x11365 relating to the excessive force incident. [Dkts. 110 at 7; 97-3 at 8; 112 at 1.] The grievance alleges that while carrying legal documents with his hands cuffed behind him, officers used unnecessary excessive force causing injury to his shoulder and wrists. [*Id.*] In the box requesting the "name and/or identifier(s) of accused," the grievance lists "Sgt. Bellettiere, C/O Cruz, Lt. Greer 'and more etc.'" [Dkt. 97-3 at 8.] On October 28, 2019, Plaintiff appealed this grievance, stating he was seeking "legal action[ ]," "there are cameras everywhere including the 2 body-cams that the Sgt. and Lt. had on them that should've caught everything, and I did nothing wrong." [*Id.* at 12; *see* Dkts. 110 at 7-8; 112 at 2.]

---

[2]      These individuals are named Defendants, but they are not among those seeking summary judgment on exhaustion grounds.

### B.       Grievance 2019x11432 filed on October 25, 2019

On October 25, 2019, Plaintiff filed grievance 2019x11432, alleging that "minutes after [he] was beaten by officers and Sgt. Bellettiere for wanting to bring [ ] legal papers to court," he "was taken to the dispensary where the med tech offered ibuprofen and a band-aid" despite explaining that he was in "excruciating pain." [Dkts. 110 at 8; 97-3 at 20; 112 at 2.] In the box requesting the "name and/or identifier(s) of accused," the grievance listed "Med-tech for division #10" and described this person as "Hispanic or white guy name n/a." [*Id.*] On November 7, 2019, Plaintiff appealed this grievance, stating that he was "still in severe pain" and he had filed several Health Service Request slips but had not received any response. [*Id.*; *see* Dkt. 97-3 at 23.]

### C.       Grievance 2019x12533 filed on November 18, 2019

On November 18, 2019, Plaintiff filed grievance 2019x12533, stating that earlier that day, he and C/O Powell had "words," including that C/O Powell was "cracking gay jokes." [Dkts. 97-3 at 26; 110 at 8.] According to the grievance, Plaintiff informed Powell of the injury to his shoulder, including that Plaintiff "could not lift [his] arm up too high," but as soon as Plaintiff was handcuffed, Powell lifted his arms above his head, threatened a write-up, threatened to keep Plaintiff in segregation, and later denied Plaintiff access to the dayroom while also refusing to order a psychological evaluation after Plaintiff requested it. [Dkts. 110 at 8−10; 97-3 at 26.] In the box requesting the "name and/or identifier(s) of accused," the grievance listed C/O Powell, C/O Howe, C/O Telez, C/O Finn, and C/o Perez. On December 2, 2019,

3

Plaintiff appealed this grievance by stating "still nothing had changed" since he filed the grievance. [Dkts. 110 at 9; 97-3 at 29.]

### D. Grievance 2019x12473 filed on November 18, 2019

On November 18, 2019, Plaintiff filed grievance 2019x12473, alleging that since being assigned to Division 9, Unit 1-G, he was "denied access to the day room," "begg[ed] for grievances from the officers," and was "denied every time except for one . . ." [Dkts. 110 at 9; 97-3 at 31.] The grievance alleges that he called for Sgt. Sheenan to come and speak with him, he was "threatened by c/o's with more seg time" if he continued calling for Sgt. Sheenan, and that his requests for a psych evaluation were ignored. [*Id*.] In the box that requests the "name and/or identifier(s) of accused," the grievance lists C/O Roman, Seaton, Telez, Hantek, Diaz, Mathews, A'shour, Powell, Martinez, Rivera, Finn, Howe, Sgt. Sheehan. [*Id*.] On December 5, 2019, Plaintiff appealed this grievance by stating that his arm had been lifted too high despite informing the officer of his shoulder injury. [Dkts. 110 at 10; 97-3 at 32.]

### E. Grievance 2019x13081 filed on December 5, 2019

On December 5, 2019, Plaintiff filed grievance 2019x13081, alleging that his complaints of severe pain in his back and right shoulder persisted, and he had filed multiple Health Service Request slips that remained unanswered. [Dkts. 110 at 10; 97-3 at 39.] The grievance stated that the pills he was given during previous visits with medical staff did not treat his ongoing pain. [*Id*.] In the box requesting the "name and/or identifier(s) of accused," the grievance lists Cook County Health and Hospital Staff, Division 9 and 10 med-techs, and a John/Jane Doe. [*Id*.] On January 2, 2020, Plaintiff completed an appeal of this grievance stating, "this response doesn't explain

4

why several [Health Service Request] slips were not responded to." [Dkt. 97-3 at 46.] After seeing a doctor on December 20, 2019, Plaintiff wrote, "I'm still in pain, and my arm from my shoulder to my fingers are numb." [Dkts. 110 at 10−11; 97-3 at 46.]

### F.    This Lawsuit

Plaintiff filed his original Complaint on January 22, 2020 [Dkt. 1], and a Second Amended Complaint in July 2022. [Dkt. 62.] In addition to the original claims brought against the initial Defendants arising from the alleged excessive force incident and ensuing medical treatment, the Second Amended Complaint added a conspiracy claim against Defendants Bock, Schurig, Bennett, and Mila, all of whom work for the Use of Force Review Unit.  Plaintiff alleges that these Defendants sought to cover up the October 2019 excessive force incident in the form of an inadequate investigation [*Id.*].

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted).

Both the Supreme Court and the Seventh Circuit have repeatedly reminded district courts that "document[s] filed *pro se*" must be "'liberally construed,'" in recognition of the fact that *pro se* litigants lacking formal legal education should "'be held to less stringent standards than . . . lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Millikan v. Town of Ingalls*, 2022 WL 3928516, at *1 (7th Cir. Aug. 31, 2022) ("We construe *pro se* briefs liberally."). On the other hand, "even *pro se* litigants must follow rules of civil procedure." *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Townsend v. Alexian Bros. Med. Ctr.*, 589 F. App'x 338, 339 (7th Cir. 2015).

Defendants filed a Local Rule 56.1 Statement of Material Facts with their motion for summary judgment and provided Plaintiff with a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a litigant opposing summary judgment. [Dkts. 97; 98.] Plaintiff filed a response to the motion, a response to Defendants' Rule 56.1 Statement of Material Facts, and a declaration. [Dkts. 110; 111; 112.] He also filed his own Local Rule 56.1 Statement of Additional Material Facts, to which Defendants have responded. [Dkt. 109; 117.] Both parties admit to many of the other party's material facts, but both also attempt to improperly dispute certain statements. To dispute an asserted fact under Local Rule 56.1, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." N.D. Ill. Local R. 56.1(e)(3).

6

Certain of the responses state "objection" or "disputed," but the response does not provide a citation to evidence in the record that actually disputes the asserted fact. For example, Plaintiff disputes the statement in paragraph 22 of Defendants' Statement of Material Facts—which identifies one of the grievances at issue on the question of exhaustion—as "incomplete" "on the grounds that it is irrelevant to the case," is "not proportionate to the needs of this specific case"; and he cites to Federal Rules of Evidence 403. [Dkt. 110, ¶22.] Of course, the grievances Plaintiff filed *are* material as to whether Plaintiff exhausted his administrative remedies. And while a proportionality objection might be an appropriate response to a written discovery demand, *see* FED. R. CIV. P. 26(b)(1), it has no application at the summary judgment stage. There are other examples throughout the pleadings. [See *e.g.*, Dkts. 110, ¶¶ 7−8, 10, 13−14, 20−25; 117, ¶ 10.]

Accordingly, the Court considers only those responses supported by citations to the record. *See James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(4)); *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013). Where a party has failed to properly dispute a fact or has admitted it, the Court will accept it as true to the extent it is supported by the record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).[3]

---

[3]     Even still, strict compliance with the Local Rules is less problematic given the posture of this case. Unlike a typical summary judgment motion based on substantive merits, which often requires extensive discovery references, the present case primarily consists of certain grievance forms and the CCDOC inmate handbook. These materials do not involve the same level of back-and-forth precision typically needed for deposition or interrogatory-generated "facts" governed by Local Rule 56.1.

### III.    Analysis

### A.    The Prison Litigation Reform Act

The PLRA requires prisoners to exhaust their facility's administrative remedies before bringing civil rights suits concerning prison conditions. 42 U.S.C. § 1997e(a). Failing to exhaust administrative remedies "is an affirmative defense, so the defendants bear the burden of proof." *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "A suit filed before the prisoner has exhausted these remedies must be dismissed." *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022) (cleaned up). The exhaustion requirement mandates prisoners "make full use of whatever administrative process a prison chooses to create" in order to "monitor officer-prisoner relations," "resolve complaints quickly," and "reduce[ ] inefficient uses of the federal courts." *Id.* at 782. In other words, administrative exhaustion "alerts the prison to the nature of the wrong for which redress is sought," *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), in order to "give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (emphasis in original).

The regulations of the particular prison or jail system define what is required for proper exhaustion. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Courts follow "a strict compliance approach to exhaustion under the PLRA." *Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022) (cleaned

8

up); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). Put differently, proper exhaustion demands that an inmate "complete the administrative review process in accordance with the applicable procedural rules," *Woodford*, 548 U.S. at 88, including filing a grievance or appeal "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Cook County Department of Corrections ("CCDOC") maintains a grievance procedure that is outlined in the CCDOC inmate handbook. [Dkts. 110 at 3; 97-1.] According to the handbook, inmates must first complete an Inmate Grievance Form within 15 days of an incident or problem being grieved. [Dkt. 97-1 at 32.] The handbook states that the grievance should include "the specific date, location and time of the incident, problem or event that you are grieving." [*Id.*] A grievance appeal also must be filed "in all circumstances in order to exhaust administrative remedies" and must be done within 15 days of receiving a response. [*Id.*] The handbook also provides for eleven circumstances when a grievance "will be processed as a Non-Compliant Grievance." This list includes "complaints about other agencies or organizations," and "department rules or policies." [Dkts. 97-1 at 31; 117, ¶¶ 7–9.]

### B.   Application

The Court's first task is to determine whether the grievances Plaintiff submitted in the fall and winter of 2019 alerted CCDOC to an alleged conspiracy by

employees of the Use of Force Review Unit. The Court easily concludes that they did not.

Grievance 2019x11365 generally complains of the October 24, 2019 excessive force incident by Bellettiere, Cruz, and Greer while transporting Plaintiff to court. [Dkt. 97-3 at 8.] The second grievance, 2019x11432, relates to the events immediately following that incident when Plaintiff alleges that he was denied adequate medical care. [*Id*. at 20.] The next two grievances were both filed on November 18, 2019. One relates to Plaintiff's encounter with Officers Powell, Howe Telez and Perez, in which Powell allegedly made a "gay joke" and ignored Plaintiff's warning of a shoulder injury; the other relates to Plaintiff's assignment to Division 9 where certain requests for dayroom access and a psychological evaluation were ignored. [*Id*. at 26, 31.] The final grievance, 2019x13081, relates to certain Health Service Request slips that Plaintiff alleges were ignored following his complaints of shoulder and wrist pain. [*Id*. at 39.]

These grievances, even read as a whole, are nothing like the relevant allegations in the Second Amended Complaint. The Second Amended Complaint alleges "Defendants Sheriff Bock, Schurig, Bennett, and Mila all conspired with co-defendants to cover up the assault and misconduct of sheriffs employed at the Cook County Sheriff's Office undermining and mitigating the actions of the sheriffs violating CCDOC's Policies and Procedures, and thus agreeing with their assault encouraging defendants to do it again to plaintiff or another pretrial detainees, without justification or the use of any de-escalation tactic or calculated use of force–

10

pursuant to policy [and h]iding and/or altering video footage." [Dkts. 62 at 20; 111 at 3–4.] The grievances from 2019 contain no details about a conspiracy by and between Use of Force Review Unit employees related to covering up the alleged misconduct of other CCDOC employees.[4]

Even liberally construed, there is a clear disconnect between the events described in the grievances and the relevant conspiracy allegations in the operative complaint. Plaintiff's contention that certain sheriffs used excessive force, that other County employees disregarded his injuries, and that still others ignored his requests for medical attention is not the same as alleging that Use of Force Review Unit employees encouraged and covered up his mistreatment. *See Bowers v. Dart*, 1 F.4th 513, 517–18 (7th Cir. 2021) (explaining that inmate's "allegation in his grievance—that the correctional officer ignored him during the attack—is substantively distinct from the allegation in his federal complaint—that numerous prison employees knew of the risk and did nothing to protect [him] from the impending harm before it occurred."). Therefore, Plaintiff did not administratively exhaust his Use of Force Review Unit conspiracy claim by way of the grievances he filed in 2019.

---

[4]     It is not dispositive that the grievances do not name the relevant Defendants by name. An inmate's failure to explicitly name defendants in a grievance is not fatal to exhaustion so long as the "grievance serve[s] its function by providing prison officials a fair opportunity to address [the] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Instead, an inmate is required to "articulat[e] what facts the prison could reasonably expect from a prisoner in [his or her] position." *Glick v. Walker*, 385 F. App'x, 579, 582 (7th Cir. 2010) ("[I]t would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision.").

### C.     Rule 15(c) and Relation-Back

In his response brief, Plaintiff argues that there is a "substantial nexus between the excessive force claim and the conspiracy to cover it up," such that the "conspiracy claim definitely relates-back to the original pleading" pursuant to Federal Rule of Civil Procedure 15(c)." [Dkt. 111 at 6.] According to this argument, because there is a "logical relationship with respect to the Use of Force Review Unit Defendants and the excessive force incident," Rule 15(c) permits him to amend the complaint to add the conspiracy claim because it "derived from the same conduct and occurrence set out" in the original complaint. [Dkt. 111 at 6–8.]

This argument is flatly contradicted by *Jones*. *See* 549 U.S. at 211, 219, 221 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court . . . . All agree that no unexhausted claim may be considered . . . . [I]f a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad."). To the extent Rule 15 in any way conflicts with the PLRA, which is a later-enacted congressional statute, a later-enacted statute trumps the rule. *Harris v. Garner*, 216 F.3d 970, 982 (11th Cir. 2000) ("If there were a conflict between Federal Rule of Civil Procedure 15 and the PLRA, the rule would have to yield to the later-enacted statute to the extent of the conflict."). Allowing Plaintiff to add the conspiracy claim using Rule 15 would allow him to thwart the mandate of § 1997e(a), which requires that claim exhaustion occur before filing suit. Indeed, "the aim of the PLRA would be frustrated if prisoners could use Rule 15 to bootstrap endless unexhausted claims onto a single exhausted claim." *Gaston v. Ghosh*, 2017 WL 5891042, at *14 (N.D. Ill. Nov. 28, 2017) (concluding that

an inmate who amended his complaint to add unexhausted claims related to a hernia and lower back pain could not use Rule 15 to overcome the exhaustion requirement even though earlier grievances related to inmate's knees had been exhausted.). The Court rejects the use of Rule 15(c) to circumvent exhaustion.

### D. Unavailability

Alternatively, Plaintiff argues that the exhaustion requirement does not apply due to unavailability. [Dkt. 111 at 2.] The PLRA's exhaustion requirement hinges on an administrative remedy being "available" to a prisoner. *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022). "An 'available' remedy is one that is 'capable of use for the accomplishment of a purpose' and 'is accessible or may be obtained.'" *Id.* (quoting *Ross*, 578 U.S. at 642). If an administrative remedy is unavailable, a prisoner need not exhaust it. *Gooch*, 24 F.4th at 627 (citing *Ross*, 578 U.S. at 635). Failure to exhaust is an affirmative defense, so a defendant bears the burden of proof and cannot shift it to require a plaintiff to show that administrative remedies were unavailable. *Gooch*, 24 F.4th at 627.

Broadly speaking, there are at least three circumstances when administrative remedies can be considered unavailable under the PLRA. *Ross,* 578 U.S. at 643. First, if an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"—then it is not available to inmates. *Id.* Second, if administrative rules are so opaque or confusing that "no reasonable prisoner can use them," they are not considered available. *Id.* at 644 (cleaned up). For vagueness to render a remedy unavailable, however, genuine murkiness is required; if administrative rules simply have multiple reasonable

13

interpretations, then "Congress has determined that the inmate should err on the side of exhaustion." *Id*. Third, if prison administrators or staff "thwart inmates from taking advantage of a grievance process[,]" then the process is unavailable. *Id*. This can happen through "affirmative misconduct," such as refusing to provide or respond to grievance forms or threatening inmates with negative consequences for grieving. *Hernandez v. Dart*, 814 F.3d 836, 840, 842 (7th Cir. 2016). But it also "extends beyond 'affirmative misconduct' to omissions by prison personnel, particularly failing to inform the prisoner of the grievance process." *Id*.

Plaintiff asserts there were no administrative remedies available to exhaust the conspiracy he "discovered" "via document production" in 2022. [Dkt. 111 at 4.] Through a declaration, Plaintiff explains that "while going through the discovery stage of this case, and receiving document production in 2022, [he] discovered that the Use of Force Review Unit investigated the incident following the grievances," and that after reviewing the Unit's findings, it was "obvious that they had conspired to cover up an assault that happened in the division's dispensary and was potentially tampering with video footage and BWC footage and audio." [Dkt. 112 at ¶¶ 8–9.] He maintains there was no path available in the handbook to file a grievance about a conspiracy that occurred in 2019 and involved the Use of Force Review Unit. He points to the handbook's statement that a grievance will be processed as "Non-Compliant" if it is not filed within 15 days of the incident, problem or event; or if it complains about other agencies or organizations or about department rules or policies. [*Id*. at ¶ 11; Dkts. 97-1 at 31–32; 117, ¶¶ 7–9 (Defendants not disputing these

14

points).] And because the handbook states Non-Compliant grievances "cannot be appealed, which means the inmate will not be able to exhaust administrative remedies," no administrative remedies were available to him for this claim during the relevant period. [Dkt. 112 at ¶¶ 12–13; Dkt. 97-1 at 31.]

Defendants do not meaningfully engage with the core of Plaintiff's argument, either in their Local Rule 56.1 Statement or in their summary judgment briefs. For starters, they do not respond one way or the other to Plaintiff's claim that the Use of Force Review Unit is another agency or organization. At the summary judgment stage, the Court construes facts in a light most favorable to Plaintiff, so the Court will assume for present purposes that it is another agency or organization.

The parties agree that a grievance submitted through the ordinary channels concerning another "agency or organization" would be processed as Non-Compliant, [Dkt. 117, ¶8], and a Non-Compliant grievance cannot be appealed and therefore cannot be exhausted. [*Id.*, ¶ 10.][5] Aside from stating that "the Grievance procedure is outlined in the 2018 inmate handbook, and was available to Plaintiff," [Dkt. 117, ¶¶ 13–14], Defendants' submission does not identify the applicable handbook provision(s) that would have informed Plaintiff of the required procedures on how to properly file a complaint about another agency or organization. Alternatively,

---

[5]     Defendants "dispute" paragraph 10 of Plaintiff's Local Rule 56.1 Statement of Additional Facts by quoting the handbook language. [Dkt. 117, ¶ 10.] As discussed above, however, to dispute an asserted fact under the Local Rule, a party must cite specific evidentiary material that controverts the fact and must *concisely explain how* the cited material controverts the asserted fact. Defendants' response does not explain why the cited handbook provision controverts Plaintiff's assertion that a Non-Compliant grievance cannot be appealed and therefore cannot be exhausted. Therefore, the facts asserted in paragraph 10 are deemed admitted.

Defendants do not identify any handbook procedures for how an improperly submitted, Non-Compliant grievance might be brought into compliance. Nor do they explain what the handbook says about untimely grievances and under what circumstances a Correctional Rehabilitation Worker might make an exception to the requirement that a grievance be filed within 15 days of the alleged incident. The Court has no duty to hunt for this information and declines to search the handbook for the answers. Counsel are "best positioned and best motivated to provide more information in support of his claim." *Lane v. Structural Iron Workers Local No. 1 Pension Trust Fund*, 74 F.4th 445, 452–53 (7th Cir. 2023).

Defendants only other argument is that Plaintiff has pointed to "nothing more than his own subjective belief" that had he filed a grievance in 2022, "it would have been marked as non-compliant according to CCDOC policy." [Dkt. 116 at 6, 11 ("Plaintiff cites nothing more than his own interpretation of CCDOC's grievance policy to argue that any grievance he filed would have been determined to be non-compliant").] It is true that an inmate's "subjective unawareness of a grievance procedure" does not excuse his non-compliance. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). The PLRA does not excuse a failure to exhaust "based on a prisoner's ignorance of administrative remedies," but the prison must have "taken reasonable steps to inform the inmates about the required procedures." *Id*. Here, as discussed, Defendants have not pointed to any language in the handbook informing inmates of the applicable steps for a submitting a complaint related to another agency or organization. Nor have they said what the handbook says about submitting a

grievance when an inmate discovers evidence of an "incident, problem or event" outside the 15-day window. This means they have not met their burden of establishing the Jail took "the required reasonable steps" to make exhaustion available. *Id.*; *Hernandez*, 814 F.3d at 840 (unavailability of the process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court.").

Ultimately, this posture is what distinguishes this case from *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005), on which Defendants rely. [Dkt. 116 at 3–4.] The plaintiff in *Barnes* was made aware of the prison's grievance process for requesting a hepatitis test and treatment, so he was required to (and did) exhaust his remedies by requesting testing once before he filed suit and again after an investigation during the litigation revealed support for different claims against a new set of defendants. 420 F.3d at 678. The facts of this case more closely align with *Hernandez* where the administrative remedies were unavailable because officials failed to inform an inmate of the grievance process during a hospitalization. 814 F.3d at 842.

"[G]rievance procedures must be transparent"; requiring an inmate to take all the proper steps "does not mean that the inmate must go beyond the established system and guess at some other way of attracting the attention of the prison authorities." *Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 833–34 (7th Cir. 2020). If the handbook contains relevant guidance on how Plaintiff should have proceeded to exhaust his administrative remedies on a claim involving another

agency or organization, Defendants have not pointed to it. Therefore, they have failed to meet their burden on exhaustion. [6]

## VI. Conclusion

The administrative remedies with respect to the conspiracy claim were unavailable. Defendants' motion for summary judgment is denied.

Enter: 20-cv-501
Date: March 21, 2024

_____

Lindsay C. Jenkins
United States District Judge

---

[6] Nothing in this Order should be read to suggest that a plaintiff is not required to exhaust his administrative remedies for events or claims discovered after a civil complaint is filed. *Barnes* allowed the plaintiff to bring a claim discovered after filing the original complaint because the new claim had been administratively exhausted by the time the amended complaint was filed. See *Barnes*, 420 F.3d at 678. The difference here is that Defendants have not met their burden of establishing that an administrative remedy was available to Plaintiff on his conspiracy claim. Had one been available, Plaintiff would have been required to complete the administrative review process in accordance with all applicable procedural rules. *Woodford*, 548 U.S. at 88; *Pozo*, 286 F.3d at 1025.