**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Lonnial L. Roundtree, | |
| *Plaintiff*, | |
| v. | No. 20 CV 501 |
| Tom Dart, *et al.*, | Judge Lindsay C. Jenkins |
| *Defendants*. | |

*MEMORANDUM OPINION AND ORDER*

Lonnial Roundtree, a pretrial detainee in custody at the Cook County Jail, filed this civil rights action *pro se* under 42 U.S.C. § 1983 arising from a claim of excessive force. [Dkt. 62.] In his First Amended Complaint filed on July 28, 2022, Roundtree alleges that Defendants Bellettiere, Cruz, Rafferty, Dusek and Brumfield-Greer used excessive force while transporting him to a state court appearance on October 24, 2019. [Dkt. 62 at 7-14.] Next, he alleges that Defendant Cortez assaulted him in the dispensary after he received medical attention. [*Id*. at 11-12.] Third, he alleges that Defendants Bennett, Bock, Mila, and Schurig, all of whom are employed in the Cook County Sheriff's Use of Force Review Unit, conspired against him in connection with their internal review of the events of October 24. [*Id*. at 14-19.] Finally, he alleges a *Monell* claim against Cook County and Sheriff Dart. [*Id*. at 19-20.][1]

Following fact discovery, Defendants filed a motion for summary judgment. [Dkt. 164.] Because Roundtree's claims are barred by the statute of limitations, are unexhausted, or fail on the merits, the motion is granted.

### I.  Northern District of Illinois Local Rule 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). "To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

---

[1]  Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

Any party, including a *pro se* litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (district courts are entitled to "strictly enforce" their local rules, even against a pro se litigant); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules").

Here, Defendants filed a Rule 56.1 statement, and as required by Rule 56.2, Roundtree was served with a "Notice to Unrepresented Litigant Opposing Summary Judgment." [Dkt. 164–2 and 164-3.] This latter filing explains what a motion for summary judgment is and what steps Roundtree needed to take to respond to the motion. Roundtree, however, has neither filed a response brief nor a statement of facts, and his deadline to do so has come and gone. The court set a response deadline of August 27, 2025, but as of this Order no filing has been docketed. [Dkt. 163.] "In managing their caseloads, district courts are entitled to—indeed they must—enforce deadlines." *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015) (cleaned up). It will therefore proceed without the benefit of Roundtree's arguments. Because the motion for summary judgment is unopposed, the factual assertions in the supporting Local Rule 56.1(a)(2) statement are deemed admitted for purposes of summary judgment to the extent that they are supported by the record. *See* LR 56.1(e)(3).[2]

## II. Background

*Underlying Incident*

On October 24, 2019, officers were transporting Roundtree to a scheduled court hearing. Cook County Department of Corrections Security Protocol requires that detainees be transported with handcuffs applied behind the back. [Dkt. 165-4 at 3.] Roundtree brought four large manilla folders with him for court containing legal papers. Roundtree estimated that the papers weighed between 15 and 25 pounds. [Dkt. 165-2 at 13.]

After Roundtree entered the tier interlock area, a space where detainees are searched and secured for transport, he was patted down by Defendant Cruz while a second officer searched Roundtree's papers. [Dkt. 165-3 at 28-29.] According to his deposition testimony, Roundtree and Cruz began to argue about the number of folders Roundtree should be able to take with him to court. Cruz told Roundtree that he had too many files and Roundtree tried to explain that he needed all the files to address

---

[2] While the facts presented in the Rule 56.1 Statement are undisputed, this does not absolve the court of its responsibility to determine whether Defendants have "'show[n] that summary judgment [is] proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)) (noting that summary judgment may not be granted against the nonmovant when she fails to file a response "as some kind of sanction").

the motion that was to be heard in court that day. [*Id.* at 30.] After Roundtree was handcuffed with his hands behind his back, Cruz put the folders under Roundtree's arms but naturally, some of the papers began to fall. [*Id.* at 30-31.] Roundtree's request to be cuffed with his hands in front of him was denied.

At Roundtree's request, Defendant Bellettiere, a sergeant, arrived. Roundtree began to explain his need for the folders to Bellettiere, but Bellettiere "didn't say anything" and tried at least twice more to put the loose papers under Roundtree's arms. [*Id.* at 37-38.] Bellettiere later "slung the papers to the door" and onto the floor. [*Id.* at 38.]

Still handcuffed, Cruz and Bellettiere took Roundtree by the arms to transport him to court, but Roundtree did not want to leave his paperwork behind. [Dkt. 165-2 at 15.] It is undisputed that Roundtree refused to walk. [*Id.*] Video footage depicts Roundtree being escorted in a hallway by Cruz and Bellettiere with his hands cuffed behind him along with several other officers close behind. [Dkt. 165-13.] While waiting at the elevator, Defendant Dusek made physical contact with Roundtree by helping to stand him up. An unidentified officer with the group was carrying Roundtree's folders. It is undisputed that the only officers who had any physical contact with Roundtree were Cruz, Bellettiere, and Dusek. [Dkt. 165, ¶ 37.]

As he was being escorted, it is undisputed that Roundtree became passive, at times dropping his weight, with his feet dragging behind him as they moved. [Dkt. 165-8 (16:14-17:05); Dkt. 165-9 (:17-1:37); Dkt. 165-11 (:20-:30); Dkt. 165-13 (:20-:30).] When the group arrived to their next stop, the machine scanning room, Roundtree was secured to a bench. [Dkt. 165-14 (:45-1:14).]

Once on the bench, Roundtree requested medical attention. [Dkt. 165, ¶ 38.] Defendants Brumfield-Greer and Cortez escorted Roundtree to the dispensary to be examined by medical staff. [*Id.*, ¶ 39.] Roundtree was examined, received ibuprofen and a bandage, and was cleared to leave. [*Id.*, ¶ 40.] Cortez ordered Roundtree to leave the dispensary so that he could attend his court hearing. Once out of the dispensary, Roundtree was escorted to court without further incident. [*Id.*, ¶ 43.]

According to his amended complaint, these events injured Roundtree's shoulders, back, and wrists. [Dkt. 62 at 11-14.]

*Use of Force Review Unit*

The Cook County Sheriff's Office maintains a Use of Force Review Unit responsible for conducting internal reviews of all use of force incidents. [Dkt. 165, ¶¶ 44-45; Dkt. 165-17.] It is undisputed that the Unit is solely an interoffice department that reviews use of force incidents that does not provide a remedy for detainees as a matter of policy. [*Id.*]

3

Defendants Schurig, Bock, Mila, and Bennett are assigned to the Unit, and they participated in the review of the October 24, 2019 incident detailed above to determine whether officers complied with departmental policies. [Dkt. 165, ¶ 47.] Specifically, Schurig collected initial documents and assigned the case to Bennett for investigation. Bennett, assisted by Mila, investigated the incident, which included requesting and reviewing documents and video footage, and interviewing staff and medical personnel. On November 5, 2019, Bock forwarded the investigative findings to supervising staff, which concluded that the use of force on October 24, 2019 was within policy and reasonable. [*Id.*, ¶ 52; Dkt. 165-7 at 1.] It is undisputed that Roundtree has never met any of the Defendants assigned to this Unit, nor were any of them present during the events of October 24, 2019. [*Id.*, ¶¶ 48-51, 53.]

### III. Legal Standard

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Many of the events in question were preserved in a video recording, which the court may rely on "to the extent that it establishes the events 'with confidence' and 'beyond reasonable question." *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 984 (7th Cir. 2021) (noting that a court may "take stock" of video evidence "without favoring the nonmovant where the video contradicts his view of the facts"); *Jones v. Anderson*, 116 F.4th 669, 677 (7th Cir. 2024) (where the events in question were preserved in a video recording, the court reviews the facts "in the light depicted by the videotape," provided that "there are no allegations or indications that the videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened.) (cleaned up).

### IV. Analysis

#### A. Statute of Limitations

Defendants argue that Roundtree's *Monell* claim and conspiracy claim are both barred by the statute of limitations. [Dkt. 164-1 at 7-8.] They argue that Roundtree did not amend his complaint to add either claim until July 28, 2022, which is more than two years after the events of October 2019. The court agrees.

4

Section 1983 does not contain an express statute of limitations so federal courts adopt the forum state's statute of limitations for personal injury claims. *Fillmore v. Page*, 358 F.3d 496, 508 (7th Cir. 2004). In Illinois, the statute of limitations is two years "after the cause of action accrued." 735 ILCS 5/13–202 (2005); *Flynn v. Donnelly*, 793 Fed. Appx. 431, 434 (7th Cir. 2019); *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019). A claim normally accrues "when a plaintiff knows the fact and the cause of an injury." *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

"Because *Monell* policy claims fall under the scope of Section 1983, they are also subject to the two-year statute of limitations in Illinois." *Jones v. Burge*, 2012 WL 2192272, at *8 (N.D. Ill. June 13, 2012). Here, the *Monell* claim accrued when Roundtree knew, or should have known, that his constitutional rights were violated. *Armour v. Country Club Hills*, 2014 WL 63850, at *5 (N.D. Ill. Jan. 8, 2014). This means the *Monell* claim accrued contemporaneously with his underlying excessive force claim. Although Roundtree timely pursued his excessive force claim when he filed his initial complaint in January 2020, it is undisputed that he did not plead his *Monell* claim until June 2022. [Dkt. 62.] Given this unrefuted evidence, Roundtree's *Monell* claim is untimely because it was filed more than two years after the events of October 2019.

The same is true for the conspiracy claim. It is undisputed that the Use of Force Review Unit's investigation surrounding the events of October 2019 concluded on November 5, 2019. [Dkt. 165-7 at 1.] Roundtree's conspiracy claim accrued by at least this latter date, which is more than two years before the date of the amended complaint (June 28, 2022), when Roundtree sued Defendants Schurig, Bock, Mila, and Bennett for the first time. Accordingly, the conspiracy claim is barred by the statute of limitations.

### B. Exhaustion

Defendants also argue that they are entitled to summary judgment because Roundtree failed to exhaust his administrative remedies on the *Monell* claim, and failed to exhaust his administrative remedies as to his claims concerning Defendant Cortez. In connection with their motion, Defendants submitted grievance records of five grievances Roundtree filed with jail officials arising from the October 24, 2019 incident. [Dkt. 165-19.]

Defendants argue that although Roundtree had access to the CCDOC grievance procedure during the relevant period, he has not identified any grievance that notified officials of his claim that there was a widespread practice giving rise to the incident that occurred on October 24, 2019 under *Monell*, nor has he identified a grievance alerting CCDOC staff of his claims regarding events in the dispensary in October 2019. [Dkt. 165, ¶¶ 63-64.]

5

Under the PLRA, prisoners must "exhaust administrative remedies before filing a federal claim about prison conditions." *Crouch v. Brown*, 27 F.4th 1314, 1320 (7th Cir. 2022). Exhaustion, applied in the summary judgment, requires a defendant official to "demonstrate that the plaintiff [] failed to exhaust the applicable grievance procedures and that those procedures were available to him as a matter of law." *Jones v. Lamb*, 124 F.4th 463, 467 (7th Cir. 2024). The defendant bears the burden of proving the affirmative defense of a failure to exhaust, *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022), which is true even though Roundtree failed to respond to the summary judgment motion. *Thomas v. Kolhouse*, 2025 WL 1483373, at *2 (7th Cir. May 3, 2025).

To satisfy the PLRA's exhaustion requirement, Roundtree had to file a grievance that raised the *Monell* allegations and his allegations concerning the events in the dispensary to ensure that "a prison has received notice of, and an opportunity to correct, a problem before being drawn into litigation." *Jackson v. Esser*, 105 F.4th 948, 958–59 (7th Cir. 2024) (internal quotation omitted). To provide adequate notice, a grievance must describe "the nature of the wrong for which redress is sought." *Id.* at 959 (quoting *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020)).

Here, Roundtree filed several grievances arising from the events on October 24, 2019, including the alleged use of excessive force, so there is no reason to conclude that the grievance system was unavailable to him. [Dkt. 165-19.]

Roundtree's failure to respond to summary judgment means that he has not come forward with evidence rebutting Defendants' showing that no grievance was ever filed that fairly put CCDOC on notice of his *Monell* allegations or the events that occurred in the dispensary concerning Defendant Cortez. To satisfy exhaustion, a grievance need not necessarily name a prison official by name. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) ("that Maddox didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement."). But here, Roundtree has failed to point to one or more grievances that fairly put CCDOC on notice of these allegations as required by the PLRA, so he failed to exhaust his administrative remedies. *See Jackson*, 105 F.4th at 959. Dismissal of the *Monell* claim and of the claim against Defendant Cortez for failure to exhaust is therefore warranted.

### C. Excessive Force Claim

Because Plaintiff is a pretrial detainee, his claim arises under the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015); *Kemp v. Fulton*, 27 F.4th 491, 498 (7th Cir. 2022). To prevail on a claim of excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–397.

Whether the force was objectively reasonable depends on the facts and circumstances of each case. *Id.* at 397. Factors to be considered include: (1) the relationship between the need for use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officers to temper the amount of force used; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397. The court considers these factors from the perspective of what a reasonable officer on the scene would have understood, not with the benefit of hindsight. *Id.* The court also must take into consideration the government's need to manage the facility in which the plaintiff was detained, and defer to policies and practices that are "needed to preserve internal order and discipline and maintain institutional security." *Id.* (cleaned up). An officer is not required to use the least amount of force possible to restrain a detainee. Rather, the force must be reasonable under the circumstances. *Harris v. Ealey*, 2021 WL 5823513, at *4–5 (N.D. Ill. Dec. 8, 2021 (citing *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

Excessive force cases are sometimes poor candidates for summary judgment because in many instances there are disputes of fact about what occurred. *See, e.g., Harris*, 2021 WL 5823513, at *4–5. The Seventh Circuit has emphasized, however, that "whether a particular use of force was objectively reasonable is a legal determination rather than a pure question of fact for the jury to decide." *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018); *Catlin v. City of Wheaton*, 574 F.3d 361, 367 (7th Cir. 2009) (observing that while summary judgment should be granted sparingly in excessive force cases, this holds true only when the parties "tell different stories about what happened"). Thus, summary judgment is proper in an excessive force case where, as here, there is no genuine issue of material fact between the parties, or where a plaintiff's version of events is accepted as true, and no reasonable jury could find that that particular use of force was excessive. *See, e.g., Catlin*, 574 F.3d at 367; *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016).

Defendants argue that they used only objectively reasonable force during the transport, pointing to the undisputed facts that Roundtree refused to comply with orders to leave the interlock tier and walk to the machine scanning room, and he resisted Defendants' attempts to transport him including by using "dead weight tactics" throughout the encounter, including by dragging his feet and dropping his weight. [Dkt. 164-1 at 9-13.]

The court agrees that the *Kingsley* factors weigh in Defendants' favor in that the officers employed the level of force that they did based on the undisputed factual record and the events as shown in the video evidence.

As to the relationship between the need and amount of force used (*Kingsley* factor 1) and whether the plaintiff was actively resisting (*Kingsley* factor 6), there is no dispute that Defendants used force only after Roundtree refused to comply with

7

orders to leave the tier interlock area and walk to the machine scanning room. Specifically, Cruz and Bellettiere grabbed Roundtree underneath the arms, one man on each side, and began to transport him to the elevator. [Dkt. 165 at 21.] Roundtree admitted in his deposition that he did not want to leave his paperwork behind, so he did not submit to moving forward. [Dkt. 165-2 at 15 ("I'm not going to lie. I wasn't walking because I didn't want to leave my documents out of my eyesight."); Dkt. 165-3 at 52 (same).] Video footage depicts Roundtree refusing to walk or being carried down a hallway at various points, then into the elevator, and then to a bench in the machine scanning room. [Dkt. 165-8 (16:14-17:05); Dkt. 165-9 (:17-1:37); Dkt. 165-11 (:20-:30); Dkt. 165-13 (:20-:30).] It is undisputed that Defendant Brumfield-Greer, a lieutenant who arrived to assist, ordered Roundtree to stop dragging his feet and walk but Roundtree refused to comply. [Dkt. 165-2 at 15; Dkt. 165-12 (:28-:45).] In short, Cruz, Bellettiere and Dusek continued to use force because Roundtree continued to resist walking by using dead weight. As the Seventh Circuit has recognized, inmates must comply with orders because their failure to do so places correctional officers and other inmates in danger. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) ("Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.").

The severity of the security problem at issue (*Kingsley* factor 4) and the threat reasonably perceived by the Defendants (*Kingsley* factor 5) also weigh in Defendants' favor. Not only was Roundtree dead weight, but he admitted that he "probably" threatened the officers by saying "I'll beat your ass." [Dkt. 165-3 at 53-54.] A reasonable officer would have perceived a severe security problem and a significant threat to the officers or other inmates based on an inmate who threatened to harm others.

*Kingsley* factor 3 also weighs in Defendants' favor. It is undisputed that the encounter began with no use of force at all, and that once it was apparent Cruz and Roundtree could not agree on whether all the folders were needed for court, Cruz called Sergeant Bellettiere to the tier, something Roundtree specifically requested. While there is no doubt that Roundtree was understandably upset about the fact that Bellettiere wouldn't listen to Roundtree's explanations about the folders, it's also undisputed that force was only used when Roundtree refused to walk. It's undisputed that Defendants Rafferty and Brumfield-Greer made no physical contact with Roundtree at any point. [Dkt. 165, ¶ 37.] And the video depicts one of the escorting officers carrying Roundtree's documents as the group moved to the machine scanning room, something that undoubtedly de-escalated the situation. [Dkt. 165-8 (17:20).]

As for *Kingsley* factor 2, Roundtree's amended complaint alleges that he suffered injury to his shoulders, back and wrists, and the court does not doubt that the injuries were the result of the struggle to move Roundtree while he was handcuffed. But while the extent of the injury is relevant because it provides some indication of the amount of force applied, see *McCottrell v. White*, 933 F.3d 651, 664

8

(7th Cir. 2019), "injury and force are only imperfectly correlated, and it is the latter that ultimately counts," *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). That Roundtree was injured is not dispositive of whether the use of force was unconstitutionally excessive. What matters is whether, under all the circumstances and in consideration of all the *Kingsley* factors above, the use of force was objectively reasonable notwithstanding the resultant injury. The court concludes that it was.

In sum, from the perspective of a reasonable officer whose interests included managing the facility and preserving order, no reasonable juror could find that the use of force was objectively unreasonable in the context of Roundtree's refusal to obey instructions during the transport. Defendants are therefore entitled to summary judgment.

## V. Conclusion

Final judgment will be entered. If Roundtree wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Roundtree appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non–meritorious, Roundtree could be assessed another "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre–paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Roundtree seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

Enter: 20 CV 501
Date: September 11, 2025

_____
Lindsay C. Jenkins